# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE `JUL 18 2013`



_for_ CHIEF JUSTICE

This opinion was filed for record
at _8:00 a.m._ on _July 18, 2013_

Ronald R. Carpenter
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Disciplinary Proceeding Against | ) ) ) | No. 200,926-3 |
| | ) | En Banc |
| THOMAS R. KAMB, | ) ) | |
| an Attorney at Law. | ) ) | Filed `JUL 18 2013` |
| | ) | |

GONZÁLEZ, J.—After practicing law in Washington State for more than 20 years, Thomas Kamb misrepresented the existence of a court order to a tribunal and then altered a filed court order to conceal his lie. Although we recognize the gravity of displacing someone of his or her profession, we order Kamb disbarred for his misconduct.

## I. FACTS AND PROCEDURAL HISTORY

Kamb was admitted to the Washington State Bar Association (WSBA) in 1987. He primarily practices criminal law, and about 50 percent of his cases arise from alcohol-related driving offenses. This disciplinary action stems from Kamb's representation of a client facing criminal charges and revocation of her driver's license for driving under the influence. A hearing was set in the criminal matter on

the morning of May 13, 2008, before Judge David Svaren at the Skagit County District Court. According to Kamb's calendar, Kamb had approximately 20 separate court matters scheduled that day. Before the hearing, Deputy Prosecuting Attorney Sloan Johnson faxed Kamb a plea offer that would allow Kamb's client to plead guilty to the lesser charge of first degree negligent driving. Kamb proposed an order consistent with that offer at the hearing. Johnson consented to the order, and Judge Svaren approved it.

The order did not suppress Kamb's client's breath test results, and Kamb did not request such an order. A suppression order may have precluded the Department of Licensing (DOL) from suspending his client's driving privileges. *See Thompson v. Dep't of Licensing*, 138 Wn.2d 783, 982 P.2d 601 (1999).

Later that afternoon, Kamb represented the same client in a DOL telephonic hearing before Hearing Officer Lori Provoe. The following exchange took place:

> Hearing Officer [Provoe]: Uh, Counsel, will your client be testifying today?
>
> Counsel [Kamb]: No, your Honor. I do, uh, have an exhibit that I want to send you, and it is a copy of a[n] order from the District Court suppressing the breath test in this case.
>
> Hearing Officer: Okay, what's the basis for this suppression?
>
> Counsel: The basis is a lack of foundation.
>
> Hearing Officer: And that's all it says?

Counsel: No. It goes on to say that the, (pause) that uh (pause) the breath test lacks a foundation and that the decision to take the test was not at all a voluntary decision.

Hearing Officer: Okay, um, uh, well I'll have you go ahead and fax it to me following the hearing, and I'll take a look at that and consider that. I'll go ahead and mark that as Exhibit No. 3, as I don't have it in front of me to read the language on it, so I don't –

Counsel (interrupting): We filed it this morning with the Court. I forgot to take a copy so I'm gonna probably fax it [ ] in to you [ ] tomorrow if that's okay.

Hearing Officer: Oh, that's fine, and does it have a Judge's signature on it?

Counsel: It does.

Ex. 18. Provoe adjourned the hearing, but kept the record open to allow Kamb to submit the court order.

After the hearing, Kamb went to the clerk's office at the Skagit County District Court and asked a court clerk for his client's file. Kamb took the file away from the front counter and then wrote "BAC suppressed not a knowing & voluntary decision to take test" on the order that Judge Svaren had approved that morning. Ex. 5. Kamb returned to the counter and asked the clerk for a copy of the order. Having seen Kamb alter the order, however, the clerk refused to make a copy and instead reported the incident to another clerk, who contacted Deputy Prosecuting Attorney Johnson. Johnson asked Kamb to come to his office.

Kamb and Johnson discussed the matter, and Kamb requested that Johnson stipulate to suppression of the breath test results. As a result of their conversation,

3

Johnson believed that the DOL hearing had not yet occurred and did not know that Kamb had already altered the court order. Johnson agreed to suppress the breath test results and sent the clerk an e-mail authorizing her to give Kamb a copy of the order.

When Kamb returned to the court, however, the clerk referred him to Judge Svaren. Kamb told Judge Svaren that he had intended to take a copy of the altered order to Johnson and then to Judge Svaren for their approval. Kamb claimed that he did not intend to do anything underhanded.

Kamb later returned to Johnson's office and said that he was pressed for time that day and wrote on the court order as a shortcut. He also admitted to Judge Svaren that he had made a mistake and apologized to the court administrator.

Kamb did not immediately inform Provoe that his client's breath test results had not been suppressed. Provoe attempted to contact Kamb to ask about the order, and after some "phone tag" they communicated in June 2008. Only then did Kamb inform Provoe that the test results had not been suppressed. Provoe suspended Kamb's client's license for 90 days.

Judge Svaren filed a grievance with the WSBA regarding Kamb's conduct. As a result, the WSBA filed a formal complaint against Kamb charging three counts of professional misconduct. Count 1 charges Kamb with misrepresenting the existence of an order suppressing his client's breath test to the hearing officer in violation of RPC 3.3(a)(1). Count 2 charges Kamb with changing Judge Svaren's order in violation of RPC 8.4(b), 8.4(c), and 8.4(d). Count 3 charges Kamb with violating RPC 1.3 (which

requires a lawyer to act diligently and promptly) by failing to discuss suppression of the breath test with Johnson before the DOL hearing.

Hearing Officer Donald W. Carter found that the WSBA had proved the allegations by a clear preponderance of the evidence and that the presumptive sanction for counts 1 and 2 was disbarment. The hearing officer also found numerous aggravating factors weighing in favor of adopting the presumptive sanction and no mitigating factors to support a lighter sanction. The disciplinary board adopted the hearing officer's decision by a nine-to-one vote.

## II.   ANALYSIS

The Washington State Supreme Court is the definitive authority for attorney discipline. *In re Disciplinary Proceeding Against Kuvara*, 149 Wn.2d 237, 246, 66 P.3d 1057 (2003). But the court gives a hearing officer's findings of fact considerable weight, particularly when they address credibility and veracity of witnesses. *In re Disciplinary Proceeding against Poole*, 156 Wn.2d 196, 208-09, 125 P.3d 954 (2006). We recognize "that the hearing officer is in the best position to determine factual findings regarding a lawyer's state of mind and his decision is given 'great weight' on review." *In re Disciplinary Proceeding Against Cramer*, 165 Wn.2d 323, 332, 198 P.3d 485 (2008) (quoting *In re Disciplinary Proceeding Against Longacre*, 155 Wn.2d 723, 744, 122 P.3d 710 (2005)). Thus, challenged findings of fact will be upheld if supported by substantial evidence. *In re Disciplinary Proceeding Against Marshall*, 167 Wn.2d 51, 66, 217 P.3d 291 (2009). "'Substantial evidence exists if

the record contains evidence in sufficient quantum to persuade a fair-minded, rational person of the truth of a declared premise.'" *Poole*, 156 Wn.2d at 209 n.2 (internal quotation marks omitted) (quoting *In re Disciplinary Proceeding Against Bonet*, 144 Wn.2d 502, 511, 29 P.3d 1242 (2001)). Unchallenged findings of fact are treated as verities on appeal. *Marshall*, 167 Wn.2d at 66.

Disciplinary counsel must prove misconduct by a clear preponderance of the evidence. ELC 10.14(b). "'Clear preponderance' is an intermediate standard of proof . . . requiring greater certainty than 'simple preponderance' but not to the extent required under 'beyond [a] reasonable doubt.'" *Poole*, 156 Wn.2d at 209 (alteration in original) (internal quotation marks omitted) (citing *In re Disciplinary Proceeding Against Allotta*, 109 Wn.2d 787, 792, 748 P.2d 628 (1988)).

A.      Findings of Fact

Kamb challenges several of the hearing officer's factual findings. "It is incumbent on counsel for the appellant to present argument to the court why specific findings of fact 'are not supported by the evidence and to cite to the record to support that argument.'" *In re Disciplinary Proceeding Against Haskell*, 136 Wn.2d 300, 311, 962 P.2d 813 (1998) (quoting *In re Estate of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998)). Although Kamb fails to offer specific citation to the record, we nonetheless address his challenges and find them wanting.

*1. Did Kamb discuss or negotiate the suppression of his client's breath test results prior to the hearing?*

6

Kamb challenges the finding that he failed to discuss or negotiate suppressing his client's breath test results until after the district court hearing. His challenge basically reiterates his version of the facts: he negotiated suppression before the hearing and simply forgot to include the relevant language in the order. But Johnson testified that he was quite certain they did not discuss the suppression issue, and the hearing officer found that Kamb's testimony lacked credibility. The hearing officer's finding is supported by substantial evidence.

*2. Did Kamb falsely represent to Hearing Officer Provoe that a valid suppression order existed?*

Kamb next challenges the findings that he intended to cause Provoe to believe that a valid suppression order existed at the time of the DOL hearing and that he knew there was no suppression order at the time of the DOL hearing. At the DOL hearing, however, Kamb affirmatively stated that the district court had suppressed the breath test results and even explained the basis of the nonexistent order. Kamb testified that he expressed uncertainty regarding the order during an unrecorded conversation immediately prior to the DOL hearing, but Provoe denies that this conversation occurred. Kamb's arguments conflict with Provoe's testimony, which the hearing officer found credible, and the hearing officer's findings are thus adequately supported.

*3. Did Kamb lead Johnson to believe that his client's DOL hearing had not yet occurred?*

7

Kamb disputes the hearing officer's finding that Kamb led Johnson to believe the DOL hearing had not yet transpired when Kamb spoke to Johnson in the afternoon following the DOL hearing. This finding is amply supported. The testimony shows that Johnson knew defense attorneys seek breath test suppression orders *before* DOL hearings to take advantage of collateral estoppel. Thus, Kamb's request for a suppression order suggested the DOL hearing was impending. Furthermore, considering his substantial experience in driving under the influence cases, Kamb presumably would have known that his request would give this impression.

*4. Did Kamb knowingly, willfully, and intentionally alter the plea order?*

Kamb challenges the finding that he knowingly, willfully, and intentionally altered the order, arguing that his significant experience as an attorney, the fact that he never previously altered a court order, and his belief that Judge Svaren would approve the modified order weigh against this finding. However, the fact that Kamb modified the order after Judge Svaren had signed it, without the judge's permission, and after misrepresenting its contents, provides substantial evidence in support of this finding.

*5. Did Kamb fail to timely disclose to Provoe that no suppression order existed?*

Kamb challenges the finding that he failed to timely disclose to Provoe that there was no suppression order. Kamb did not disclose the lack of a suppression order until June 2008 at the earliest, weeks after the DOL hearing and only after Provoe

8

initiated contact with Kamb. Substantial evidence supports the hearing officer's finding that Kamb failed to timely disclose the lack of the suppression order.

*6. Did Kamb's actions injure his client?*

Kamb argues that his failure to negotiate and obtain a suppression order did not injure his client because Provoe might not have applied the doctrine of collateral estoppel if Kamb had presented an order with the proposed language. Even if this is true, Kamb's actions entirely eliminated the possibility of a suppression order working to his client's advantage. Provoe testified that the doctrine may have applied if she had been presented with a suppression order. The hearing officer's finding that Kamb's failure to obtain a suppression order injured his client—whose license was suspended—is supported by substantial evidence.

*7. Did Kamb commit a felony by writing on the filed court order?*

Kamb challenges the hearing officer's finding that he committed a felony under RCW 40.16.010 by willfully altering a court order. Kamb argues he "wrote" on the order but did not willfully alter it. The hearing officer found otherwise, and his finding is supported by substantial evidence, including Kamb's own representation to the WSBA in a letter stating that he asked a clerk for a blue pen because he wanted the color of his writing to match the ink already on the order. Ex. 15, at 1.

*8. Are the findings on credibility supported?*

Finally, Kamb argues that the hearing officer's finding that Johnson and Judge Svaren were credible witnesses is inconsistent with the hearing officer's finding of no

9

mitigating factors because Johnson and Judge Svaren both testified that Kamb expressed remorse. Simply because the hearing officer failed to find that Kamb's expressions of remorse mitigated his ethical violations does not mean that Johnson and Judge Svaren lacked veracity as witnesses.

In sum, all disputed findings of fact are supported by substantial evidence.

B.     Sanctions

The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) guide lawyer discipline in Washington. *In re Disciplinary Proceeding Against Day*, 162 Wn.2d 527, 537, 173 P.3d 915 (2007). After misconduct is found, we determine whether the board applied the correct presumptive sanction in light of the ethical duty violated, the attorney's state of mind, and the extent of any actual or potential injury caused by the misconduct. *Id.* at 538; STANDARDS std. 3.0(a)-(c). An attorney's state of mind may be intentional, knowing, or negligent. *In re Disciplinary Proceeding Against Dynan*, 152 Wn.2d 601, 618, 98 P.3d 444 (2004). The *Standards* define "injury" as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct." STANDARDS Definitions at 13. Next, we decide whether any aggravating or mitigating factors alter the presumptive sanction. *Day*, 162 Wn.2d at 538; STANDARDS std. 3.0(d). Finally, we consider the sanction in light of its proportionality to sanctions imposed in similar cases and the degree of unanimity among members of the board. *Poole*, 156 Wn.2d at 220.

We do "not lightly depart from recommendations shaped by [the] experience and perspective" of the disciplinary board. *In re Disciplinary Proceeding Against Noble*, 100 Wn.2d 88, 94, 667 P.2d 608 (1983). Although this court maintains ultimate responsibility for determining the nature of attorney discipline, we will adopt the board's recommendation "unless we are able to articulate specific reasons for adopting a different sanction." *Id.* at 95.

*1. Presumptive Sanction*

In arriving at a presumptive sanction, we first consider the ethical duties violated and the attorney's state of mind.

On count 1, the hearing officer found that Kamb intentionally misrepresented the existence of the suppression order. Kamb argues that standard 6.13, applicable to negligent misrepresentations, should apply and that reprimand is therefore the appropriate sanction. But the hearing officer specifically rejected Kamb's contention that his misrepresentation was negligent. The hearing officer's findings are supported by substantial evidence, as discussed above, and thus reprimand would not be proper.

On count 2, the hearing officer found Kamb intentionally and willfully altered a court order and violated RCW 40.16.010, which is a class C felony.[1] Kamb argues that standard 5.13 applies to this count and that reprimand is the appropriate sanction. But standard 5.13 applies only when the other standards under section 5.1 do not fit

---

[1] RCW 40.16.010 provides in part that "[e]very person who shall willfully and unlawfully [ ] alter . . . a record . . . filed or deposited in a public office, or with any public officer, by authority of law, is guilty of a class C felony . . . ."

11

the conduct. Here, standard 5.11(b), applicable when a lawyer engages in intentional conduct involving dishonesty, is more appropriate.

On count 3, the hearing officer found that Kamb's failure to obtain a suppression order was negligent and in line with a reprimand under standard 4.53(a), which applies when a lawyer "demonstrates failure to understand relevant legal doctrines or procedures." The WSBA does not challenge the conclusion that reprimand is proper but believes that the correct standard is 4.43, which applies "when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client." We agree with the WSBA that standard 4.43 is more applicable to this case.

We next consider the extent of any actual or potential injury. Kamb challenges the extent of injury for the misconduct alleged under counts 1 and 2, arguing that the level of injury he caused his client and the legal system is not sufficient to incur disbarment. But misrepresenting the existence of a suppression order to a hearing officer seriously adversely reflects on Kamb's fitness to practice law. Even more egregious, however, is Kamb's alteration of a filed court order. Kamb usurped the authority of the court by creating an unauthorized order that benefited his client. The possibility that Provoe might have relied on an altered court order causes a serious injury to the profession and to the judicial system. *See In re Disciplinary Proceeding Against Christopher*, 153 Wn.2d 669, 680, 105 P.3d 976 (2005) (finding that disbarment was the presumptive sanction where a lawyer filed forged documents and

12

false declarations). "The presumptive sanction of disbarment both preserves public confidence in the legal system and deters other attorneys from similar conduct." *Id.* The presumptive sanction for Kamb's misconduct under counts 1 and 2 is disbarment.

### 2. *Aggravating and Mitigating Factors*

We now consider whether any aggravating or mitigating factors justify departure from the presumptive sanction. The hearing examiner found that multiple aggravating factors and no mitigating factors applied. In regard to aggravating factors, the hearing examiner cited a prior disciplinary offense, dishonest or selfish motive, a pattern of misconduct, substantial experience in the practice of law, Kamb's refusal to acknowledge the wrongful nature of his conduct, and the illegality of his conduct. Kamb challenges several of these factors.

First, Kamb challenges the factor of dishonest or selfish motive. The testimony supports a finding that Kamb's motive in telling Provoe he had already obtained a suppression order and in altering the signed order was dishonest and selfish, as he sought to hide the fact that he had failed to request the order on time. The evidence does not support applying this factor to the misconduct alleged under count 3: Kamb's failure to ask for a suppression order, which appears to be the result of negligence. Accordingly, the aggravating factor of dishonest or selfish motive applies to counts 1 and 2, but not 3.

Second, Kamb objects to the aggravating factor of a pattern of misconduct, which is based on his prior disciplinary admonition for failing to appear for court

13

hearings. Where a series of acts of misconduct are alleged in one complaint, and when an attorney is sanctioned multiple times for similar misconduct, such misconduct constitutes a pattern. *See, e.g., Marshall*, 167 Wn.2d at 84 (aggravator applied based on pattern of current misconduct); *see also In re Disciplinary Proceeding Against Cohen*, 150 Wn.2d 744, 761-62, 82 P.3d 224 (2004) (court considered similar misconduct from prior disciplinary proceedings to constitute a pattern). Here, Kamb's misconduct centers around one incident and his attempts to rectify it. Because this misconduct is substantially different from his prior failure to attend hearings, his misconduct is not a part of a pattern. The disciplinary board erred in adopting this factor.

Third, Kamb disagrees with the application of the aggravating factor of refusal to acknowledge the wrongful nature of his conduct, asking the court to instead apply the mitigating factor of remorse. These factors are primarily based on the attorney's credibility, so the court gives great weight to the hearing officer's finding. *In re Disciplinary Proceeding Against Behrman*, 165 Wn.2d 414, 423, 197 P.3d 1177 (2008). Further, "reasoning away the misconduct does not constitute acknowledgement of misconduct." *Dynan*, 152 Wn.2d at 621. Although Kamb apologized for his actions and admitted he made a mistake, he continues to argue that his most culpable misconduct was the result of negligence, rather than intent. The evidence supports the hearing officer's conclusion that Kamb has not acknowledged

14

the wrongful nature of his conduct and is not entitled to the mitigating factor of remorse.

Fourth, Kamb asserts that the aggravating factor of illegal conduct is inapplicable because he was never charged with or convicted of a crime in relation to altering the court order.[2] But an attorney may be sanctioned for committing a crime for which he was never charged. *See, e.g., Kuvara,* 149 Wn.2d at 252-53; *In re Disciplinary Proceeding Against Cramer,* 168 Wn.2d 220, 230-31, 225 P.3d 881 (2010). Kamb's violation of RCW 40.16.010, however, cannot apply as an aggravator in determining the correct sanction for count 2 because it forms part of the basis for that count of misconduct. *See In re Disciplinary Proceeding Against Whitt,* 149 Wn.2d 707, 720, 72 P.3d 173 (2003) (finding that submission of false evidence could not be an aggravating factor where the act was also the factual basis for the count of misconduct). Therefore, the aggravating factor of illegal conduct applies only to counts 1 and 3.

Next, we consider mitigating factors. The hearing officer did not apply any mitigating factors. As noted above, Kamb argues that the mitigating factor of remorse applies, but we disagree. We do agree with Kamb, however, that the mitigating factor of good character or reputation applies. Johnson testified that he trusted Kamb and

---

[2] Kamb also claims that this factor is not referenced in standard 9.2. Aside from the fact that the aggravating factors listed in the ABA *Standards* are nonexclusive, Kamb is wrong on this point. Standard 9.22(k) provides that "illegal conduct" is an aggravating circumstance.

that Kamb is an effective defense attorney. Judge Svaren also testified that he had a long relationship with Kamb and had expected and received candor from him.

Accordingly, the following aggravating factors apply: prior disciplinary offense, dishonest or selfish motive (as to counts 1 and 2), substantial experience in the practice of law, refusal to acknowledge wrongful nature of conduct, and illegal conduct (as to counts 1 and 3). The only mitigating factor is good character or reputation. Although there is no mathematical formula for weighing these factors, we do not find that the single mitigating factor of good character or reputation justifies a departure from the presumptive sanction of disbarment.

*3. Proportionality*

The court will alter a sanction if it determines that it is inappropriate after considering factors of unanimity among the board members and proportionality of the recommended sanction to sanctions applied in similar cases. *See Kuvara*, 149 Wn.2d at 257 -59. The decision of a divided board is entitled to less deference. *Whitt*, 149 Wn.2d at 723. The board's vote was nine-to-one. Although the board did not unanimously agree on the recommended sanction of disbarment, there is a "high degree of unanimity," which the court hesitates to alter. *See In re Disciplinary Proceeding Against Miller*, 149 Wn.2d 262, 285, 66 P.3d 1069 (2003).

Under proportionality review, the court considers whether the sanction is appropriate when compared to similarly situated cases. *Christopher*, 153 Wn.2d at 686-87. "[T]he attorney facing discipline must bring forth cases demonstrating the

disproportionality of the sanction imposed." *In re Disciplinary Proceeding Against VanDerbeek*, 153 Wn.2d 64, 97, 101 P.3d 88 (2004). Kamb argues that the board's recommended sanction of disbarment is disproportionate to the sanctions imposed in *Dynan* and *Christopher*. In *Dynan*, the attorney submitted declarations to the court with attached bills for legal services that had been altered. 152 Wn.2d at 607. Dynan whited-out the actual hourly rate charged and replaced it with a reasonable attorney fee before submitting the bills to the court. *Id.* The court found that Dynan's knowing alteration of the bills and submission of false declarations constituted falsification and misrepresentation of evidence. *Id.* The board recommended a nine-month suspension. *Id.* at 625. The court found that disbarment was the presumptive sanction. After conducting a proportionality analysis, however, we concluded that a six-month suspension was appropriate. *Id.* at 624.

In *Christopher*, the attorney failed to timely submit an offer of judgment pleading to preserve her client's right to attorney fees. 153 Wn.2d at 674. To cover her mistake, Christopher backdated an offer of judgment pleading and forged her secretary's signature on the document. *Id.* Christopher also made a declaration in support of the offer of judgment pleading, filed the documents, and sent them to opposing counsel. *Id.* at 674-75. The court found that the presumptive sanction was disbarment but that the balance of mitigating and aggravating factors and the proportionality review justified a departure from the recommended sanction. *Id.* at

17

680-88. We ordered an 18-month suspension followed by a three-year probation period, as recommended by the board. *Id.* at 688.

The circumstances surrounding Kamb's misconduct are sufficiently different from those in *Dynan* and *Christopher*, such that disbarment is still the proper sanction. The attorneys in *Dynan* and *Christopher* each submitted falsified documents to a tribunal, but Kamb actually altered an order that the court had authorized, usurping that court's authority. There do not appear to be any Washington disciplinary cases involving such conduct.[3]

## III. CONCLUSION

Kamb intentionally misrepresented to a hearing officer that he had obtained a suppression order. Kamb then altered a filed court order to conceal his misrepresentation. Aggravating factors are present, including Kamb's prior disciplinary offense and his substantial experience in the practice of law. Although we recognize the severity of denying an experienced attorney his or her continued livelihood, Kamb's deception strongly indicates that he is not fit to practice law. We order Kamb disbarred.

---

[3] In his reply brief, Kamb urges us to compare his case to *In re Disciplinary Proceeding Against Ferguson*, 170 Wn.2d 916, 246 P.3d 1236 (2011). New issues cannot be raised for the first time in a reply brief, however, so we decline to consider *Ferguson* in our proportionality analysis. *See In re Disciplinary Proceeding Against Kennedy*, 80 Wn.2d 222, 236, 492 P.2d 1364 (1972) ("Points not argued and discussed in the opening brief are deemed abandoned and are not open to consideration on their merits.").

González, J.

WE CONCUR:

Madsen, C. J.

Stephens, J.

Wiggins, J.

19