FILED
COURT OF APPEALS
DIVISION II

2014 MAY 28 AM 8:31

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DAVID S. DIVIS,<br><br>               Appellant,<br><br>v.<br><br>WASHINGTON STATE PATROL,<br><br>               Respondent. | No. 43744-9-II<br><br><br><br>UNPUBLISHED OPINION |

HUNT, J. — David S. Divis appeals the superior court's affirmance of the Washington State Patrol Chief John R. Batiste's order demoting him from sergeant to trooper. Divis argues that we should reverse the superior court because Chief Batiste (1) exceeded his authority and wrongly entered his own independent findings of fact that differed from the Washington State Patrol (WSP) Trial Board's findings of fact; (2) improperly relied on a prior settlement agreement arising from Divis's earlier acts of misconduct, which settlement agreement was not before the Trial Board; (3) failed to weigh the proportionality of his discipline of Divis against his discipline of other troopers in similar situations; and (4) lacked just cause to demote him because the investigation was not conducted fairly, one of the elements of cause in the WSP's Administrative Investigation Manual. Holding that Chief Batiste acted within his supervisory authority, we affirm.

FACTS

The Washington State Patrol (WSP) hired David S. Divis as a trooper in 1989. On March 2, 2006, WSP promoted Divis to sergeant; later that month, WSP assigned him to supervise a trooper detachment in South Seattle.

In January 2008, WSP's Office of Professional Standards Internal Affairs investigated allegations that Divis had made racially insensitive comments in front of his troopers multiple times during 2006 and 2007 and that he had used intimidation techniques to prevent employees from reporting his racially insensitive behavior. WSP initiated disciplinary proceedings, alleging eleven specific violations.

An administrative WSP Trial Board conducted a six-day hearing in December 2009 and January 2010. After hearing testimony from 18 witnesses and reviewing over 3,000 pages of information, the Trial Board (1) determined that WSP had proved three of the alleged racially insensitive remarks[1]; (2) unanimously agreed that Divis had violated WSP Regulation 8.00.010 (A), requiring employees to obey WSP rules of conduct, and WSP Regulation 8.00.030 (A), prohibiting unacceptable conduct by employees; and (3) unanimously recommended that Divis be sanctioned by suspending him for 20 working days. The Trial Board forwarded its findings

---

[1] More specifically, in its April 2010 decision, the Trial Board found that WSP had proved (1) "Divis made a comment something to the effect of, 'The three laziest troopers in this detachment happen to be black,'" Clerk's Papers (CP) at 178; (2) "Divis made a racially insensitive remark when he compared major league baseball player Tony Gwynn to Aunt Jemima," CP at 180; and (3) Divis improperly "used an 'open forum' management style to discuss an individual's activity, performance, and disciplinary issues between detachment members." CP at 185. The Trial Board qualified these findings as follows: WSP did not prove that Divis used the word "lazy," Divis improperly referred to race "when reviewing or discussing employee performance," and his "Aunt Jemima" comment was "insensitive and was offensive." CP at 179, 180.

and recommendation to Chief Batiste, who entered a two-page final order (First Final Order), demoting Divis from sergeant to trooper.

Divis petitioned the superior court for a judicial writ of review.[2] The superior court dismissed the Trial Board's finding that Divis had engaged in an open forum management style, vacated Chief Batiste's demotion order because it did not comply with RCW 34.05.461(3)[3], and remanded for additional review and entry of a new order. On December 2, 2011, Chief Batiste entered a new final order (Second Final Order), again demoting Divis from sergeant to trooper. Divis filed a new Petition for Judicial Writ of Review. The superior court upheld the chief's Second Final Order. Divis appeals.

## ANALYSIS

### I. FINDINGS OF FACT

Divis first contends that Chief Batiste exceeded his authority under RCW 43.43.090 by making his own findings of fact in his Second Final Order that contradicted or exceeded the scope of the Trial Board's findings, which were binding on him. The record does not support Divis's contentions. Furthermore, Divis mischaracterizes Chief Batiste's recitation of the Trial Board's findings of facts.

---

[2] A WSP trooper may appeal an adverse administrative action to the superior court by
apply[ing] to the superior court . . . for a writ of review to have the reasonableness and lawfulness of the [WSP] order inquired into and determined.
The superior court shall review the determination of the chief of the [WSP] in a summary manner.
RCW 43.43.100.

[3] The legislature amended RCW 34.05.461 in 2013. LAWS OF 2013, ch. 110 § 2. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

On the contrary, the record supports WSP's assertion that Chief Batiste did not make new findings of fact. Rather, he merely summarized the Trial Board's record and findings, and issued his final order based on two ultimately-sustained allegations against Divis.[4] For example, the chief's Second Final Order stated: "Credible testimony . . . confirms that Sergeant Divis made a statement *to the effect*, 'The three laziest troopers in this detachment happen to be black.'" Clerk's Papers (CP) at 22 (emphasis added). Chief Batiste did not find that Divis had used the term "lazy"; rather, in noting that some troopers had testified that Divis had "made a statement to [that] effect," the chief was merely summarizing parts of the administrative record before the Trial Board. CP at 22. Thus, Divis is mistaken in his contention that Chief Batiste's Second Final Order revised the Trial Board's findings about whether he (Divis) had used the term "lazy trooper" in a racial context. Br. of Appellant at 17.

Similarly, the record does not support Divis's contention that Chief Batiste found his (Divis's) "Aunt Jemima" comment to have been racially discriminatory, in contrast to the Trial Board's finding no evidence of discrimination. Br. of Appellant at 18. First, Divis fails to identify what finding in the chief's Second Final Order was allegedly contrary to the Trial Board's finding; nor does Divis provide a record citation for such finding, contrary to RAP

---

[4] The Trial Board found three of seven allegations of misconduct proven. On appeal, however, the superior court dismissed one of the three proven findings, leaving two "sustained" findings, on which Chief Batiste ultimately based his final order. CP at 21.

10.3(a)(6).[5]

Nevertheless, our review of the record does not reveal any finding by Chief Batiste that Divis's comment was discriminatory. Instead, we find only the chief's statement that Divis's "Aunt Jemima" comment "was insensitive and was offensive." CP at 24. Furthermore, the chief's statement did not contradict the Trial Board's finding that "[t]he preponderance of the evidence presented clearly supports that the allegation of Discrimination/Harassment is **unfounded**." CP at 199. Thus, Divis's first argument fails.

## II. CONSIDERATION OF 2006 SETTLEMENT AGREEMENT

Divis next argues that in demoting him from sergeant to trooper, Chief Batiste improperly relied on a prior 2006 settlement agreement that arose from Divis's earlier acts of misconduct, which was not before the Trial Board. Chief Batiste's Second Final Order stated, "Of critical importance to me in making this decision is Sergeant Divis's previous history of discipline for similar conduct." CP at 27. This Second Final Order detailed an earlier complaint against Divis by another trooper, who alleged that Divis had "'made inappropriate comments about her and other female personnel in the agency'"; this case was resolved in 2006 through a settlement agreement that Divis's conduct had violated WSP Regulation 8.00.030 (A)—Unacceptable Conduct. CP at 27.

---

[5] We are not required to search the record for support for a party's argument. *In re Estate of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998) (courts are not obligated "to comb the record" where counsel has failed to challenge specific findings and support arguments with citations to the record); RAP 10.3(a)(6). *See also In re Disciplinary Proceeding Against Kamb*, 177 Wn.2d 851, 861, 305 P.3d 1091 (2013) (internal quotation marks and citation omitted) (quoting *In re Disciplinary Proceeding Against Haskell*, 136 Wn.2d 300, 311, 962 P.2d 813 (1998)) ("'It is incumbent on counsel for the appellant to present argument to the court why specific findings of fact are not supported by the evidence and to cite to the record to support that argument.'").

In connection with the instant allegations against Divis, however, WSP withdrew the allegation and evidence related to this 2006 prior settlement agreement. Thus, WSP did not present to the Trial Board evidence of how Divis's prior behavior resulted in this settlement agreement, and the Trial Board made no findings relating to this prior settlement agreement or that Divis's currently alleged misconduct was a "pattern" or "trend." CP at 28. Nevertheless, Divis's prior misconduct and the resultant settlement agreement were part of the Trial Board's record; thus, the chief could consider this information in determining the appropriate discipline. Divis's challenge to Chief Batiste's consideration of Divis's 2006 misconduct fails.

A. Standard of Review; Statutory Authority

Each level of the judiciary reviews administrative decisions in an appellate capacity. *Farm Supply Distribs., Inc. v. Wash. Utils. & Transp. Comm'n*, 83 Wn.2d 446, 448, 518 P.2d 1237 (1974). When reviewing an administrative action, we sit "'in the same position as the superior court, applying the standards of the [Washington Administrative Procedure Act (APA)[6]] directly to the record before the agency.'" *Chandler v. Office of Ins. Comm'r*, 141 Wn. App. 639, 647, 173 P.3d 275 (2007) (quoting *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993)). "We apply a substantial evidence standard to an agency's findings of fact[7] but review de novo its conclusions of law." *Chandler*, 141 Wn. App. at 647 (citing *Premera v. Kreidler*, 133 Wn. App. 23, 31, 131 P.3d 930 (2006)).

---

[6] ch. 34.05 RCW.

[7] But because Divis does not assign error to any of the Trial Board's findings of fact, we need not apply this substantial evidence standard here. *See* RAP 10.3(g), 10.4(f).

When reviewing factual issues, the substantial evidence standard is highly deferential to the agency fact finder. When an agency determination is based heavily on factual matters that are complex, technical, and close to the heart of the agency's expertise, we give substantial deference to agency views. Under this standard, evidence must be of a sufficient quantum to persuade a fair-minded person of the truth of a declared premise. But [we do] not weigh the evidence or substitute our judgment regarding witness credibility for that of the agency. Findings of fact to which no error has been assigned are verities on appeal.

*Chandler*, 141 Wn. App. at 648 (footnotes and citations omitted).

We may grant relief "if the party challenging the agency order shows that the order is invalid for one of the reasons set forth in RCW 34.05.570(3)[8],"[9] such as where "[t]he order is

_____

[8] RCW 34.05.570(3) lists the following grounds for judicial relief "from an agency order in an adjudicative proceeding":

(a) The order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied;

(b) The order is outside the statutory authority or jurisdiction of the agency conferred by any provision of law;

(c) The agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure;

(d) The agency has erroneously interpreted or applied the law;

(e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter;

(f) The agency has not decided all issues requiring resolution by the agency;

(g) A motion for disqualification under RCW 34.05.425 or 34.12.050 was made and was improperly denied or, if no motion was made, facts are shown to support the grant of such a motion that were not known and were not reasonably discoverable by the challenging party at the appropriate time for making such a motion;

(h) The order is inconsistent with a rule of the agency unless the agency explains the inconsistency by stating facts and reasons to demonstrate a rational basis for inconsistency; or

(i) The order is arbitrary or capricious.

[9] *Chandler*, 141 Wn. App. at 647.

outside the statutory authority or jurisdiction of the agency conferred by any provision of law"[10]; or (2) "[t]he agency has erroneously interpreted or applied the law."[11] We may also grant relief where the action complained of has caused substantial prejudice. RCW 34.05.570(1)(d).[12] Divis fails to meet any of these standards.

## B. Failure To Assign Error to Trial Board's Findings of Fact

Divis does not dispute that the legislature has authorized the WSP chief to determine what discipline to take against a trooper after receiving the Trial Board's findings, which here focused on Divis's proven misconduct. *See* RCW 43.43.090, which provides, in part:

> After hearing, the findings of the trial board[13] shall be submitted to the chief. Such findings shall be final if the charges are not sustained. In the event the charges are sustained the chief may determine the proper disciplinary action and declare it by written order served upon the officer complained of.

Neither this statute nor any other statute of which we are aware limits the WSP chief's broad discretion to determine the type and scope of disciplinary action by confining the chief to consider *only* the Trial Board's findings. Unlike the chief's broad disciplinary discretion, the Trial Board's mission is narrow—limited to finding whether the WSP proved its allegations of

---

[10] RCW 34.05.570(3)(b).

[11] RCW 34.05.570(3)(d); *Chandler*, 141 Wn. App. at 647 n.8.

[12] RCW 34.05.570(1)(d) provides: "The court shall grant relief only if it determines that a person seeking judicial relief has been substantially prejudiced by the action complained of."

[13] WSP's 2008 *Regulation Manual*, §§ 13.00.010(B)(2), and 13.00.030(A)(1), provide that "[t]he purpose of the Trial Board is to determine all relevant facts" and to "recommend . . . a penalty to the Chief." AR at 3101.

misconduct. *See, e.g., Zoutendyk v. Washington State Patrol*, 27 Wn. App. 65, 72, 616 P.2d 674 (1980), *aff'd*, 95 Wn.2d 693, 628 P.2d 1308 (1981).

RCW 43.43.090 provides that the Trial Board's findings are final "if the charges are *not* sustained." (Emphasis added.) But the statute does not establish the same finality for findings about charges that were sustained. Furthermore, the statute gives the chief broad discretion to decide the appropriate discipline for the sustained charges. When determining the legislature's intent, however, we do not focus exclusively on chapter 43.43 RCW; we also look to other statutes and principles, such as the APA. *See Jackstadt v. Washington State Patrol*, 96 Wn. App. 501, 508, 976 P.2d 190 (1999).

Washington's APA, codified as chapter 34.05 RCW, "contemplates that an administrative proceeding may involve . . . a reviewing officer [who] reviews the initial order." *Jackstadt*, 96 Wn. App. at 508 (citing RCW 34.05.464(4)). In trooper disciplinary proceedings before the Trial Board, the WSP chief serves as the reviewing officer and issues a final order. *See Jackstadt*, 96 Wn. App. at 507-08. Our courts have held "that a reviewing officer has the authority 'to modify or replace an [administrative law judge's (ALJ)] findings, including findings of witness credibility.'" *Hardee v. Dep't of Soc. & Health Servs.*, 152 Wn. App. 48, 59, 215 P.3d 214 (2009) (quoting *Regan v. Dep't of Licensing*, 130 Wn. App. 39, 59, 121 P.3d 731

(2005)), *aff'd*, 172 Wn.2d 1, 256 P.3d 339 (2011).[14] Our courts have also interpreted RCW 34.05.464(4) as granting a reviewing officer "the authority to exercise the same decision making power as the ALJ unless limited by law or by the review[ing] officer with notice to all parties." *Kabbae v. Dep't of Soc. & Health Servs.*, 144 Wn. App. 432, 441, 192 P.3d 903 (2008).

Chapter 43.43 RCW precludes the WSP chief's reinstating and convicting a trooper of charges that the Trial Board has dismissed; this chapter also limits the chief's authority to discipline the trooper for acts of misconduct that the Trial Board has found were substantiated. RCW 43.43.090. But this chapter does not expressly restrict the chief to the Trial Board's findings in exercising his discretion to decide the nature and extent of discipline for substantiated acts of misconduct. Instead, for purposes of determining appropriate discipline, the chief may consider evidence that exceeds the scope of the Trial Board's findings.

Moreover, Divis does not assign error to any of the Trial Board's findings of fact, which we therefore take as verities on appeal. *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). And to the extent that Chief Batiste's following comments can also be characterized as "findings of fact," Divis's failure to assign error to them by number and citation to record, as RAP 10.3(a)(6) and RAP 10.3(g) require, again means that we may treat them as verities on appeal:

---

[14] *See also Islam v. Dep't of Early Learning*, 157 Wn. App. 600, 614-15, 238 P.3d 74 (2010) (in making a final order, the reviewing judge had the authority to review and revise the portion of the ALJ's initial order). This principle applies not only to ALJs, but also to administrative fact finding boards that serve the same purpose, such as the Trial Board here. *See Kittitas County v. Kittitas County Conservation Coal.*, 176 Wn. App. 38, 46-47, 308 P.3d 745 (2013) (Court of Appeals reviews hearing board decisions under the APA, chapter 34.05 RCW); *see also Marcum v. Dep't of Soc. & Health Servs.*, 172 Wn. App. 546, 559, 290 P.3d 1045 (2012).

(1) Sergeant Divis's conduct "suggests a deeply troubling trend, and a failure by Sergeant Divis to exercise more appropriate judgment. I am very concerned about Sergeant Divis' pattern of inappropriate and insensitive behavior, and the fact that he appears to be unable to learn from his mistakes." CP at 28.

(2) "This is not Sergeant Divis' first instance of inappropriate and insensitive behavior related to race and gender,"[15] "these were not isolated comments. They were instances of the same reprehensible behavior that Sergeant Divis had also been previously disciplined for, but that disciplinary action clearly was not effective in changing his behavior." CP at 25.

It is clear from Chief Batiste's Second Final Order that he based Divis's discipline on the two acts of misconduct found by the Trial Board and sustained by the superior court. But in determining the extent and type of discipline, as is his statutory duty under RCW 43.43.090, nothing required the chief to limit his consideration to these two findings. On the contrary, it would have been unreasonable for him to have ignored Divis's prior misconduct, which prior sanctions had failed to remedy. *See Chandler*, 141 Wn. App. at 650 (reviewing officer may substitute his or her findings for those made by the ALJ).

Years ago, we held that (1) instead of imposing the recommended three-day suspension, WSP could dismiss an officer who had "previously been counseled because of his attitude and behavior"; and (2) that consideration of the officer's prior discipline was not tantamount to using

---

[15] CP at 28.

11

hearsay to prove the current charges because it was not admitted to prove the truth of the prior assertions. *Zoutendyk*, 27 Wn. App. at 72.[16] As we noted in *Zoutendyk*:

> Arbitrary and capricious action has been defined as willful and unreasoning action, without consideration and in disregard of facts and circumstances. Where there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached. *State v. Rowe*, 93 Wn.2d 277, 609 P.2d 1348 (1980). Measured by that test, we cannot conclude that the Board's ultimate conclusion constituted arbitrary and capricious action.

*Zoutendyk*, 27 Wn. App. at 72.

Similarly, here, once the Trial Board found that Divis committed misconduct, it was within Chief Batiste's discretion to decide the discipline. *See* RCW 43.43.090. And we cannot say that Chief Batiste acted unfairly, arbitrarily, or capriciously in looking to Divis's prior employment and disciplinary history in determining the current discipline, rather than making this important decision in a vacuum. For example, Chief Batiste also considered other troopers' reports that Divis's racially charged comments were becoming more egregious and that previous

---

[16] *Zoutendyk* involved a state personnel board hearing to review the dismissal of a WSP communications officer. On appeal, Zoutendyk challenged the board's imposition of the sanction of dismissal, instead of the three-day suspension the hearing examiner had recommended. We rejected Zoutendyk's argument that the board had improperly admitted and considered "hearsay" documents containing evidence that he "had previously been counseled because of his attitude and behavior" where they had not been "admitted for truth of the assertions contained in those documents." *Zoutendyk*, 27 Wn. App. at 72.

attempted rehabilitative discipline and diversity training had failed to correct these behaviors.[17]

It was within Chief Batiste's prerogative to decide that WSP could not tolerate this type of behavior and that Divis was no longer fit to be in a supervisory position.

### III. PROPORTIONALITY

Divis next argues that (1) under the WSP's Administrative Investigation Manual (AIM), the Trial Board must find that the sanction is proportionate to the offense and comparable to sanctions for similar misconduct; (2) his demotion from sergeant to trooper was not proportionate to his offense or comparable to sanctions for others' misconduct; and (3) Chief Batiste's refusal to compare Divis's discipline to sanctions in other cases, including those that the WSP settled, fails to meet this AIM requirement. We disagree.

Divis cites no controlling authority for his argument that AIM requires both the Trial Board and the WSP Chief to compare Divis's discipline to discipline for other instances of trooper misconduct. On the contrary, the legislature has clearly given sole discretion to the WSP chief to "determine the proper disciplinary action" for charges of misconduct that the Trial Board has "sustained." RCW 43.43.090. Although AIM requires WSP to address whether the

---

[17] In his Second Final Order, Chief Batiste emphasized:

> While his conduct would be inexcusable for any WSP employee, it is particularly egregious coming from a person in Sergeant Divis' position of authority and responsibility. By his comments he communicated intolerance, scorn, and distain [sic] for his three African-American troopers. . . . They were instances of the same reprehensible behavior that Sergeant Divis had also been previously disciplined for, but that disciplinary action clearly was not effective in changing his behavior.

CP at 24-25. Chief Batiste also stated, "Sergeant Divis has a pattern of proven misconduct undeterred by prior discipline, and has failed, to date, to acknowledge how completely inappropriate his conduct has been, and the impact it has on subordinates." CP at 29.

discipline is proportionate to the offense and comparable to what another employee would receive, Divis fails to cite authority to show that these AIM requirements preempt the WSP chief's discretion to impose discipline under RCW 43.43.090. Therefore, we do not further consider this argument. RAP 10.3(a)(6).

## IV. FAIRNESS

Finally, Divis argues that there was no just cause to demote him, based on several contentions, each of which we separately address and reject.

### A. Investigation

Divis first contends that WSP did not conduct its investigation fairly, one of the elements of cause in WSP's AIM. Citing AIM, Divis specifically asserts that Sergeant Charles P. LeBlanc, the officer who conducted WSP's investigation, (1) failed to inquire about the complainant's motive or reasons for coming forward 10 months after the conduct occurred; (2) failed to determine the scope and content of destroyed handwritten notes[18]; (3) relied on hearsay evidence; (4) failed to use open-ended questions when interviewing witnesses; (5) failed to interview any of Divis's witnesses; and (6) failed to read Divis's performance reviews. But AIM provides "[g]uidelines" only for conducting an investigation; it does not establish inviolable procedural requirements that, if not followed, would support a finding that WSP lacked just cause to sanction Divis. AR at 625.

---

[18] The Board heard evidence that the troopers who worked in Divis's detachment had made contemporaneous handwritten notes reflecting what they had heard Divis say. But these troopers later lost or destroyed their handwritten notes and replaced them with typewritten statements about the content of Divis's comments. Divis contends that the troopers deliberately destroyed these notes after the investigation commenced. But he provides no support for this assertion; nor does he explain why such action would require reversal of Chief Batiste's Second Final Order.

## B. Collective Bargaining Agreement (CBA)

Divis next contends that because WSP's unfair investigation failed to comply with the CBA, the CBA terms prohibited WSP's disciplinary action, which was unlawful and subject to reversal under RCW 34.05.570(3)[19]. This argument fails.

Divis first claims that (1) CBA Article 19.3C requires that the "Internal Incident Report"[20] contain "'the specific allegations against the employee'"[21]; (2) the Trial Board's findings did not match the Internal Incident Report allegations; and (3) therefore, the Trial Board did not comply with CBA procedures. Divis is incorrect: WSP's Internal Incident Report did contain the specific allegations against Divis, and the Trial Board's findings did match these allegations. Although the Trial Board did not find that Divis intended certain comments as "racial slurs," as alleged, it did conclude that Divis made "insensitive and negative" comments in a racial context.[22] CP at 180, 203. Divis does not show how the Board's finding, which Chief

---

[19] Washington's APA, chapter 34.05 RCW, provides, in part:
    (3) Review of agency orders in adjudicative proceedings. The court shall grant relief from an agency order in an adjudicative proceeding only if it determines that:

    . . . .

    (c) The agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure.
RCW 34.05.570(3)(c).

[20] AR at 596.

[21] Br. of Appellant at 33 (quoting AR at 596).

[22] The Trial Board found that Divis commented about "lazy black troopers" and "Aunt Jemima" and that Divis's comments "included needless references to race, as well as remarks about contemplated or actual disciplinary issues." CP at 198, 203. But the Trial Board declined to make a finding about Divis's intent when he made these comments.

Batiste adopted (and to which Divis does not assign error), violated the CBA. Divis also fails to show why WSP's allegedly inadequate investigation and failure to follow its recommended investigation guidelines violated the CBA or his due process rights.

Divis also contends that the Trial Board's finding that he made "insensitive and negative"[23] comments violated the notice requirement underlying CBA Article 19.3C. That the Trial Board found Divis violated a slightly different regulation ("insensitive and negative" comments) than the one charged ("racial slur") does not violate his CBA Article 19.3C right to notice of WSP's allegations against him. CP at 180, 203. Divis was on notice of the facts that the Board would review, as well as the charges brought by the WSP. He cites no authority for the proposition that the Board violated the CBA because it found that Divis's conduct was slightly less egregious than the conduct with which he was charged. Thus, we decline to address this contention further.[24]

Divis then contends that the Internal Incident Report failed to identify the complainant, as required by CBA Article 19.3A, which states that the report shall contain "'the complainant's name and address.'" Br. of Appellant at 35 (quoting AR at 596). The Internal Incident Report lists the "Department" as the complainant, instead of WSP. AR at 500. The Trial Board properly rejected Divis's argument. Furthermore, (1) any error was harmless because Divis was

---

[23] CP at 203.

[24] RAP 10.3(a)(6) requires a party to support its issues with legal authority. *See Regan v. McLachlan*, 163 Wn. App. 171, 178, 257 P.3d 1122 (2011) (Court of Appeals will not address issues if party "does not provide citation to legal authority."). Moreover, "'passing treatment of an issue . . . is insufficient to merit judicial consideration.'" *Joy v. Dep't of Labor & Indus.*, 170 Wn. App. 614, 629, 285 P.3d 187 (2012) (quoting *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012)), *review denied*, 176 Wn.2d 1021 (2013).

on notice of the disciplinary proceedings and the opposing party's identity; and (2) any technical deficiency was cured by CBA Article 19.5, which states that "[d]e minimis (minor or insignificant) variations from the following provisions shall not be the basis for overturning discipline or affect[ing] the admissibility of evidence." AR at 596.

Divis also asserts that because WSP substituted itself as the complainant, without first contacting the WSP Troopers Association, WSP did not comply with the strict requirements of CBA Article 19.12. CBA Article 19.12 requires that "[i]f the Employer decides to substitute the Agency as the complainant, the Employer agrees to contact the Association to discuss the reasons for doing so." AR at 597-98. Divis states that there is no evidence in the record that his employer, WSP, met this advance contact requirement. Again, Divis misconstrues the CBA requirements.

Because CBA Article 19.12 permits WSP to "substitute [itself] as the complainant," WSP acted in accordance with AIM in so doing. AR at 598. Furthermore, as WSP correctly notes, the WSP Troopers Association's vice president and a union representative brought these allegations against Divis; thus, the union was already on notice of the substitution and, consequently, WSP had no need to discuss the reasons for its substitution with the Association. This slight deviation from CBA Article 19.12 requirements was "[d]e minimis" and, therefore, "shall not be the basis for overturning discipline or affect[ing] the admissibility of evidence." AR at 596 (CBA Article 19.5).

### C. Chief Batiste—Appearance of Fairness Doctrine

Finally, Divis argues that Chief Batiste violated the appearance of fairness doctrine by (1) making a pre-hearing statement about his lack of confidence in Divis,[25] and (2) likely prejudging the case by having already decided to demote Divis before the Trial Board hearing occurred. This argument also fails.

Chief Batiste made these statements during a December 3, 2009 hearing in a related arbitration matter. The Trial Board held its hearings in the instant disciplinary matter later, on December 7 and 9-11, 2009, and on January 21 and 22, 2010. Chief Batiste issued his First Final Order on May 7, 2010, after the arbitrator had issued his April 21, 2010 decision. By the time the Trial Board held its hearings and Chief Batiste issued his First Final Order, Divis likely already knew about Chief Batiste's statements because Divis had been the grievant in that arbitration in which Chief Batiste had testified. Despite having an opportunity to raise his concerns about Chief Batiste's fairness at the administrative level, *before* Chief Batiste entered either his First or Second Final Order, Divis took no action to disqualify Chief Batiste before he entered either order.

Because Divis failed to object timely to Chief Batiste's role in reviewing the Trial Board's recommendation and in issuing his First and Second Final Orders, we hold that Divis waived this objection; we thus decline to address whether Chief Batiste's statements violate the

---

[25] Before the Trial Board's disciplinary proceedings in this case, Chief Batiste testified in a related arbitration matter between WSP and the WSP Troopers Association that he had decided to transfer Divis involuntarily to a different WSP district and to remove Divis from a supervisory position because it was his (Batiste's) "belief that—based on the allegations and what's contained in the file, that I lost trust and confidence in [Divis's] ability to lead another detachment." Suppl. CP at 461.

No. 43744-9-II

appearance of fairness doctrine. *See Hill v. Dep't of Labor & Indus.*, 90 Wn.2d 276, 279-80, 580 P.2d 636 (1978).

We affirm the superior court's affirmance of WSP Chief Batiste's Second Final Order demoting Divis from sergeant to trooper.[26]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Hunt, J.

We concur:

_____
Worswick, J.

_____
Johanson, C.J.

---

[26] Because Divis is not the prevailing party on appeal and because he is not entitled to reinstatement, we deny his request for attorney fees on appeal.

19