### The PEOPLE of the State of Colorado, Complainant,

v.

### Ravi KANWAL, Respondent.

### No. 12PDJ063.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Jan. 8, 2015.

Following a hearing, a hearing board disbarred Ravi Kanwal (Attorney Registration Number 21197). The disbarment took effect February 12, 2015. The Colorado Supreme Court affirmed the hearing board's decision on September 21, 2015.

Kanwal, a foreign national, was suspended from the practice of law in 2009 for representing clients when he lacked lawful immigration status and employment authorization in the United States and for failing to inform clients of those circumstances. While serving that suspension, he prepared immigration documents for a former client and failed to inform the client that he was not authorized to practice law. He thereby violated Colo. RPC 3.4(c) (a lawyer shall not knowingly disobey an obligation under the rules of a tribunal); Colo. RPC 5.5(a)(1) (a lawyer shall not practice law without a law license); and Colo. RPC 8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, and misrepresentation).

The hearing board concluded that Kanwal's knowing misconduct undermined the authority of the Colorado Supreme Court and the ability of the legal profession to regulate itself. To determine the appropriate sanction, the hearing board followed the Colorado Supreme Court's directions to apply the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992). Disbarment was the presumptive sanction under three applicable standards, including one that applies when a lawyer knowingly violates a prior disciplinary order, causing injury or potential injury to the legal system or profession. The balance of aggravating and mitigating factors in this case provided no basis for departing from that presumption.

On November 13, 2014, a Hearing Board comprising JOHN A. SADWITH and KAY SNIDER, members of the bar, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("the PDJ"), held a hearing pursuant to C.R.C.P. 251.18.

TIMOTHY J. O'NEILL appeared on behalf of the Office of Attorney Regulation Counsel ("the People"), and Ravi Kanwal ("Respondent") appeared with his counsel, ALBERT B. WOLF. The Hearing Board now issues the following "Opinion and Decision Imposing Sanctions Pursuant to C.R.C.P. 251.19(b)."

## OPINION AND DECISION IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(b)

### I. *SUMMARY*

Respondent, a foreign national, was suspended from the practice of law in 2009 for representing clients when he lacked lawful immigration status and employment authorization in the United States and for failing to inform clients of those circumstances. While serving his suspension, he prepared immigration documents for a former client and failed to inform the client that he was not authorized to practice law. He thereby violated Colo. RPC 3.4(c) (a lawyer shall not knowingly disobey an obligation under the rules of a tribunal); Colo. RPC 5.5(a)(1) (a lawyer shall not practice law without a law license); and Colo. RPC 8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, and misrepresentation). Respondent's knowing misconduct undermines the authority of the Colorado Supreme Court and the ability of the legal profession to regulate itself. Given the gravity of the misconduct and his prior disciplinary record, the Hearing Board disbars Respondent.

### II. *PROCEDURAL HISTORY*

On August 10, 2012, the People filed a complaint against Respondent, alleging he violated Colo. RPC 3.4(c), 5.5(a)(1), and 8.4(c). Respondent, initially acting pro se, answered the complaint on September 17, 2012.

In December 2012, the People moved for judgment on the pleadings. In a response filed by his then-counsel Alexander Rothrock, Respondent did not oppose entry of judgment against him as to the first two claims (Colo. RPC 3.4(c) and 5.5(a)(1)), but he opposed entry of judgment as to the third claim (Colo. RPC 8.4(c)) on the grounds that the Attorney Regulation Committee had not authorized the People under C.R.C.P. 251.12 to file that claim.

The PDJ granted the People's motion on January 7, 2013, and entered judgment as a matter of law in their favor on the Colo. RPC 3.4(c) and 5.5(a)(1) claims. But the PDJ declined to interpret C.R.C.P. 251.12, which he deemed the province of the Attorney Regulation Committee, and stayed the matter in order to allow the Committee to resolve the issue posed in the parties' briefing.

The following month, the People filed a motion for reconsideration, and Respondent submitted a response thereto, along with a motion for judgment on the pleadings as to the third claim. In an order issued on February 8, 2013, the PDJ concluded that he lacked subject matter jurisdiction to hear a claim that the Committee had not approved. The PDJ therefore dismissed Claim III without prejudice and deemed Respondent's motion moot. The People appealed that ruling in a C.A.R. 21 petition filed with the Colorado Supreme Court on March 4, 2013. These proceedings were stayed pending the interlocutory appeal.

On March 24, 2014, the Colorado Supreme Court remanded the matter to the PDJ with instructions to reinstate Claim III, explaining that C.R.C.P. 251.12 requires only the Committee's authorization for the initiation of proceedings, not the Committee's approval of specific claims to be filed. The PDJ held another at-issue conference in this matter on May 7, 2014, when Respondent's new counsel, Albert B. Wolf, entered his appearance.

The same day, the People filed a renewed motion for judgment on the pleadings on Claim III. Respondent filed a combined response and motion for leave to amend his answer on June 2, 2014. After additional briefing, the PDJ granted Respondent's request to amend his answer and denied the People's motion on June 27, 2014, with leave to refile based on Respondent's amended answer. Respondent submitted an amended answer on July 2, 2014.

On September 17, 2014, the People filed their new motion for entry of judgment on

Claim III. On October 17, 2014, after reviewing Respondent's response, the PDJ granted the People's motion and entered judgment on their Colo. RPC 8.4(c) claim. In the same order, the PDJ converted the two-day disciplinary hearing to a one-day sanctions hearing.

Finally, on November 5, 2014, the People moved the PDJ to strike portions of Respondent's hearing brief under C.R.C.P. 12(f). Upon review of Respondent's response, the PDJ granted in part and denied in part the People's motion. The PDJ found that certain portions of Respondent's hearing brief and the exhibits thereto were irrelevant to the Hearing Board's sanctions analysis, and the PDJ ordered Respondent to file an amended hearing brief consistent with those findings.

During the sanctions hearing on November 13, 2014, the Hearing Board heard testimony from David Simmons and Respondent and considered the People's exhibits 1–3.

### III. FACTS AND RULE VIOLATIONS

Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on January 30, 1992, under attorney registration number 21197.[1] He is thus subject to the jurisdiction of the Colorado Supreme Court and the Hearing Board in these disciplinary proceedings.[2] As noted above, the PDJ entered judgment on all claims alleged in the People's complaint, thereby deeming those facts and rule violations to be proved.

### Findings of Fact [3]

Respondent, a citizen of India, first came to the United States in 1987. Although he had already completed a law degree in India, he earned a second law degree from Tulane University in 1989. Under a work visa, he remained in the United States and practiced law at a firm in Cleveland from 1989 until 1991.[4] Respondent moved to Denver in 1991 and worked for a law firm here under an H1B work visa.[5] In that firm, he handled bankruptcy, security, and litigation matters, as well as some immigration cases.

In the wake of a merger, Respondent was laid off in 1994. That autumn, he opened his own firm, the Law Office of Ravi Kanwal. During most of 1995, Respondent possessed a B–1 visitor visa.[6] In December 1995, that authorization to remain in the United States expired.[7] Nevertheless, he remained in the United States in violation of 8 C.F.R. section 214.1(a)(3)(ii).[8] He married a U.S. citizen in 1999 and continued to practice law at his firm through 2009, representing clients in proceedings before the U.S. Citizenship and Immigration Services ("USCIS"), the Department of Homeland Security ("DHS"), and the Department of Justice Executive Office for Immigration Review.[9] He filed thousands of applications or petitions seeking immigration benefits for clients.[10]

Not until 2009 did immigration authorities determine that Respondent was unlawfully present in the United States. An Immigration and Customs Enforcement officer interviewed Respondent on January 26, 2009, when he admitted that he had no lawful immigration status in the United States.[11] On July 8, 2009, an administrative law judge with the Executive Office of Immigration Review suspended Respondent from practicing before the Board of Immigration Ap-

1. Respondent's registered business address is 1565 Franklin Street, Denver, Colorado 80218.

2. See C.R.C.P. 251.1(b).

3. Where not otherwise indicated, these facts are drawn from testimony provided at the sanctions hearing.

4. Respondent was admitted to the Ohio bar in 1990, but as of 2009 his status was inactive. Ex. 3 ¶ 6d.

5. Ex. 3 ¶ 6f.

6. Ex. 3 ¶¶ 6g–h.

7. Ex. 3 ¶¶ 6h, j.

8. Ex. 3 ¶ 6j.

9. Ex. 3 ¶ 6a.

10. Ex. 3 ¶ 6c.

11. Ex. 3 ¶¶ 6k–l.

peals, the immigration courts, and DHS for a period of two years.[12]

On July 21, 2009, the PDJ approved a conditional admission of misconduct and suspended Respondent from the practice of law in Colorado for a year and a day, effective August 5, 2009.[13] In the conditional admission of misconduct, Respondent admitted that by representing clients when he was not lawfully in this country and by failing to inform his clients, USCIS, and the immigration courts that he could not lawfully represent clients, he violated Colo. RPC 8.4(c), which prohibits lawyers from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, and Colo. RPC 8.4(d), which prohibits lawyers from prejudicing the administration of justice.[14] As conditions to reinstatement of his law license, Respondent was required to secure permanent lawful immigration status and to obtain work authorization from USCIS and DHS.[15]

When he was suspended from the practice of law in 2009, Respondent testified, he transferred his cases to other attorneys and refunded client fees. He had received work authorization in June 2009, and he also applied for permanent residency that year, expecting to receive approval within four to nine months, as is typical for applicants with a U.S. citizen spouse. He did not receive approval until May 2012, however, and the terms of his conditional admission of misconduct barred him from applying to reinstate his law license in the interim. He did not work in a legal capacity while awaiting approval of permanent residency. He explained to the Hearing Board that no one was willing to hire him, in part due to his disciplinary status.

Before his license was suspended, Respondent had represented a company called Pin-

cock Allen & Holt ("PAH").[16] PAH is affiliated with a larger company named Runge, Inc., a global engineering, mining software, and mining consulting service.[17] PAH is located in the United States but has international operations, so it often hires employees from overseas.[18] Starting in 2006, Respondent prepared immigration applications for PAH and represented PAH employees before USCIS.

In spring 2011, the president of PAH, who Respondent knew from his prior work for the company and who he saw socially from time to time, called Respondent to ask if he could assist PAH with hiring an employee. The president did not know that Respondent's law license was still suspended. Respondent "didn't know what to tell him, didn't think it through," and agreed to perform the work.

Respondent prepared an L–1B petition, a motion to reconsider, and a green card petition for PAH in spring 2011.[19] Respondent testified that the L–1B petition was an application to transfer an employee from Indonesia to Colorado. When that petition was denied, he prepared a motion to reconsider, which set forth information about the employee's specialized knowledge. The third form documented the qualifications of an employee whom PAH wished to bring to the United States and PAH's recruitment efforts to fill that position.

Respondent billed PAH $11,439.15 for these services on June 7, 2011.[20] He testified that about eighty percent of that amount represented filing fees and recruitment costs that he advanced, so his legal fees were about $3,800.00.

Respondent's invoice was submitted to PAH under the name of Emerson Associates, LLC. He formed Emerson Associates in

12. Ex. 3 ¶ 6o; Compl. ¶ 3; Answer General Allegations ¶ 1.

13. Ex. 2.

14. Ex. 3 ¶¶ 6p, 11a.

15. Ex. 2.

16. Compl. ¶ 1; Am. Answer General Allegations ¶ 1.

17. Compl. ¶ 1; Am. Answer General Allegations ¶ 1.

18. Compl. ¶ 1; Am. Answer General Allegations ¶ 1.

19. Compl. ¶ 7; Am. Answer, General Allegations ¶ 1.

20. Compl. ¶ 7; Am. Answer, General Allegations ¶ 1.

June 2009, Respondent testified, because he was considering purchasing a ·business through that entity. He later sent some invoices for his work on software design projects via Emerson Associates. When he performed legal services for PAH, he needed to report the income. Since his law office was closed, he invoiced PAH and reported the income through Emerson Associates.[21]

David Simmons, an immigration attorney called as a witness by the People, was retained by PAH in 2011. While reviewing files, he realized that Respondent had prepared immigration documents for PAH while suspended from the practice of law. In accordance with his duty to report ethical violations, Simmons contacted the People, who then initiated an investigation.

Respondent testified that he "apologized profusely" to the president of PAH for his conduct, though he did not refund his legal fees to PAH. He told the Hearing Board that although the applications he completed for PAH were successful, he is willing to refund his legal fees to PAH.

### Rule Violations

■ The PDJ entered judgment on the pleadings on the People's claims that Respondent violated Colo. RPC 3.4(c), 5.5(a)(1), and 8.4(c). Colo. RPC 3.4(c) provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists. Respondent violated this rule by providing legal services to PAH when he knew that his license had been suspended. Colo. RPC 5.5(a)(1) states that, absent other authorization, a lawyer shall not practice law in Colorado without a law license. Respondent practiced law while he was suspended by preparing immigration documents for PAH. Finally, Colo. RPC 8.4(c) bars lawyers from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. Respondent knowingly misrep-

resented by omission to PAH that he was still licensed to practice law.

### IV. SANCTIONS

■ The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) ("ABA *Standards*") and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[22] In imposing a sanction after a finding of lawyer misconduct, the Hearing Board must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These three variables yield a presumptive sanction that may be increased or decreased in light of aggravating and mitigating factors and in consideration of the Colorado Supreme Court's disciplinary jurisprudence.[23]

### ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* Through his knowing omission to PAH, Respondent violated his duty of candor to his client. He also violated his duty to the legal system and to the legal profession by disregarding the rules governing the practice of law and by practicing law during his suspension.

*Mental State:* The orders entering judgment on the pleadings establish that Respondent knowingly engaged in the misconduct at issue here.

*Injury:* Respondent's conduct did not cause actual harm to his client. Simmons testified that Respondent's work for PAH was satisfactory. Simmons charged PAH a flat fee when he took over those cases, and PAH was not obligated to pay any additional legal fees due to Respondent's unauthorized work for the company, according to Simmons. Moreover, Simmons testified that Respondent's preparation of immigration documents as a suspended attorney had no potential to jeopardize PAH's immigration matters, since the federal immigration agen-

---

**21.** Although the People suggested at the sanctions hearing that Respondent's formation of Emerson Associates establishes an inference that he intended as early as 2009 to receive fees for future unauthorized legal work, the Hearing Board finds no support for that inference.

**22.** *See In re Roose,* 69 P.3d 43, 46–47 (Colo. 2003).

**23.** *See In re Olsen,* 326 P.3d 1004, 1011 (Colo. 2014).

cies recognize filings regardless of whether they are prepared by a licensed attorney.

Respondent did, however, cause serious injury to the legal system and the legal profession by knowingly disobeying disciplinary orders and rules. An attorney's disregard for a court's order undermines the authority of the court. As a self-regulated profession, the bar relies upon its members to abide by disciplinary orders. An attorney who flouts such orders cannot be effectively regulated. Finally, Respondent's dishonesty harmed the bar by perpetuating the perception held by some members of the public that lawyers cannot be trusted.[24]

### ABA *Standards* 4.0–7.0—Presumptive Sanction

Disbarment is the presumptive sanction under three separate ABA *Standards*. ABA *Standard* 7.1 provides that disbarment is generally appropriate when a lawyer knowingly engages in conduct that violates a duty owed as a professional with the intent to obtain a benefit for himself, thereby causing serious or potentially serious injury to the legal system. Under ABA *Standard* 8.1(b), disbarment is generally warranted when a lawyer has previously been suspended for the same or similar misconduct and knowingly engages in further misconduct, causing injury or potential injury to the legal system or profession. And most persuasive here, ABA *Standard* 8.1(a) calls for disbarment when a lawyer knowingly violates the terms of a prior disciplinary order, causing injury or potential injury to the legal system or profession. Given that three independent ABA *Standards* call for disbarment here, the Hearing Board begins its analysis from that starting point.

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

■ Aggravating factors are considerations that may warrant an increase in the presumptive discipline to be imposed, while mitigating factors may justify a reduction in the severity of the sanction.[25] The Hearing Board considers evidence of the following aggravating and mitigating circumstances in deciding the appropriate sanction. As explained below, we apply five aggravating factors, one of which carries comparatively little weight. We also apply four mitigating factors, three of which merit comparatively little weight.

*Prior Disciplinary Offenses—9.22(a):* Respondent was suspended for a year and a day in 2011, so this factor applies in aggravation. Several factors point toward according considerable weight to this factor: Respondent's prior misconduct was serious, was similar to the present misconduct, was relatively recent, and took place prior to the present misconduct.[26] On the other hand, we have already accounted for Respondent's prior misconduct in applying ABA *Standard* 8.1(b). As such, we apply average weight to this aggravator.

*Dishonest or Selfish Motive—9.22(b):* Respondent argues that his receipt of only $3,800.00 in legal fees for his unauthorized legal work cannot support application of this factor. We disagree. The evidence shows that Respondent's personal financial stress during his period of suspension was one of the factors that led him to perform legal work for PAH. He agreed to represent PAH in part to earn money, and $3,800.00 is hardly a negligible sum. Moreover, Respondent engaged in dishonest conduct through his misrepresentation by omission to PAH. The Hearing Board therefore considers Respondent's selfish and dishonest motives in aggravation.

*Multiple Offenses—9.22(d):* Respondent not only performed unauthorized legal services but also engaged in dishonest conduct. Since Respondent did not engage in more

---

**24.** *See In re Pautler,* 47 P.3d 1175, 1179 (Colo. 2002).

**25.** *See* ABA *Standards* 9.21 & 9.31.

**26.** *See In re Jones,* 326 Or. 195, 951 P.2d 149, 152 (1997) (in determining how to weigh this factor, considering the following: (1) the serious-ness of the prior misconduct; (2) the similarity of the prior and instant misconduct; (3) the number of prior offenses; (4) the recency of the prior misconduct; and (5) whether the respondent had been sanctioned for the prior misconduct before engaging in the instant misconduct).

than two distinct types of misconduct, however, we accord relatively little weight to this aggravating factor.

*Substantial Experience in the Practice of Law—9.22(i):* As a lawyer licensed in Colorado in 1992, Respondent has considerable experience in the practice of law. This factor therefore applies in aggravation.

*Illegal Conduct—9.22(k):* The People ask us to apply this aggravator, arguing that Respondent criminally impersonated a lawyer. C.R.S. section 18–5–113 provides that a person commits criminal impersonation if he knowingly "[a]ssumes a false or fictitious identity or capacity, legal or other, and in such identity or capacity he … [p]erforms any [ ] act with intent to unlawfully gain a benefit for himself…." Respondent's admitted conduct amounts to a violation of this statute,[27] so this aggravating factor applies here.[28]

*Personal or Emotional Problems—9.32(c):* Respondent testified that at the time of his misconduct in spring 2011 he was experiencing depression and significant anxiety, though he did not seek treatment or take medication for those conditions. He had expected his immigration status to have been resolved and his law license to have been restored by 2010. He was unable to find a job, since anyone who Googled his name could see his disciplinary history. And because he had worked only for himself, he was ineligible for unemployment benefits. These circumstances humiliated him and placed financial stress on his family. In addition, his wife's mother had cancer, and he was concerned about his own health in the wake of a 2007 cardiac attack.

Respondent presented no corroborating testimony or evidence regarding this mitigating factor. In addition, as the People noted, some of Respondent's personal problems stemmed from his own prior misconduct. Nevertheless, the Hearing Board believes

that Respondent was experiencing genuine emotional distress at the time of his misconduct. We apply this factor but accord it comparatively little weight.

*Full and Free Disclosure to Disciplinary Board or Cooperative Attitude Toward Proceedings—9.32(e):* The People concede that Respondent admitted his misconduct and was candid with their office and the Attorney Regulation Committee during these proceedings. Respondent also testified that he made significant efforts to settle this matter. We give Respondent credit in mitigation for his cooperation.

*Character or Reputation—9.32(g):* For two years while he was in law school, Respondent testified, he volunteered about twenty hours per week on a death penalty project. In Colorado, he has regularly volunteered for a number of nonprofit and religious organizations, including a Hindu temple, a Sikh temple, and Mi Casa Resource Center.

While practicing in Denver, Respondent was active in the local chapter of the American Immigration Lawyers Association ("AILA"). As Simmons explained at the sanctions hearing, AILA's mission includes providing continuing education to its members and bringing member concerns to the attention of immigration agencies. Respondent chaired the local AILA chapter from 1996 to 1997.

Simmons testified he had no information suggesting that Respondent was not a competent attorney prior to his suspension. Respondent "did not have a marginal reputation." Simmons could not recall any criticism of how Respondent handled his role as AILA chapter chair. Nor could Simmons find any deficiency in the immigration documents that Respondent prepared for PAH in 2011.

---

27. *See People v. Bauer,* 80 P.3d 896, 898 (Colo. App.2003) (determining that a lawyer who practiced law after his license was suspended assumed a false or fictitious capacity as a lawyer in violation of the criminal impersonation statute).

28. *See In re Depew,* 290 Kan. 1057, 237 P.3d 24, 35 (2010) (approving application of ABA *Stan-*dard 9.22(k), even though the respondent attorney was not charged with or convicted of illegal conduct); *In re Kamb,* 177 Wash.2d 851, 305 P.3d 1091, 1099 (2013) (stating that the aggravator of illegal conduct may apply even where no crime was charged).

While we commend Respondent for his service as AILA chapter chair and for his pro bono work, we note that Colo. RPC 6.1 calls for every lawyer in Colorado to perform at least fifty hours of pro bono or public service per year, and we have no evidence that Respondent exceeded that standard. Further, Simmons's testimony that Respondent "did not have a marginal reputation" and that his unauthorized legal work for PAH was performed in a satisfactory manner is hardly a basis for recognizing a superior reputation in the legal community. Respondent did not introduce any other testimony concerning his reputation. The Hearing Board therefore places comparatively little emphasis on this mitigator.

*Delay in Disciplinary Proceedings— 9.32(j):* Respondent asks us to apply this factor, arguing that in his prior disciplinary case he should have been eligible to reinstate his law license in 2010. We decline to do so. Respondent chose to stipulate that he would obtain permanent resident status before seeking reinstatement of his law license. Further, Respondent concedes that the People have not sought extensions or otherwise delayed the matter at bar.

*Imposition of Other Penalties or Sanctions—9.32(k):* The Hearing Board likewise declines Respondent's invitation to apply this factor in mitigation. Respondent again points to his obligation to obtain permanent resident status before seeking reinstatement of his license, suggesting that this provision of his conditional admission of misconduct should count in mitigation in the present case. But Respondent himself agreed to this provision in the conditional admission of misconduct. Moreover, this mitigating factor is designed to address other penalties or sanctions for the misconduct currently before the Hearing Board. Here, the misconduct at issue is the unauthorized legal work Respondent performed for PAH. There is no evidence that Respondent has suffered any other penalties or sanctions for that misconduct.

*Remorse—9.32(l):* Respondent testified that he "feel[s] very stupid about doing what [he] did." Had he not performed the unauthorized legal work, his license likely would have been reinstated in another six or eight months, he pointed out. He said he "doesn't know why [he] did such a stupid thing," but perhaps he was "not thinking straight" and should have talked to someone. He wishes he could change his decision, and he would like to return to the practice of law, a profession he says he holds dear.

Although the Hearing Board believes that Respondent regrets his actions, his testimony conveyed more of a sense of embarrassment and regret for harming his family than remorse for having transgressed his ethical duties to the legal system and legal profession. This mitigating factor thus does not carry substantial weight.

### Analysis Under ABA *Standards* and Case Law

The Hearing Board is aware of the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[29] mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[30] Though prior cases are helpful by way of analogy, hearing boards must determine the appropriate sanction for a lawyer's misconduct on a case-by-case basis.

Respondent urges us to privately admonish him, directing our attention to *People v. Redman (Redman I).*[31] In that case, a lawyer's license had been administratively suspended because he failed to comply with continuing legal education requirements.[32] Notwithstanding his suspension, he repre-

---

**29.** *See In re Attorney F.,* 285 P.3d 322, 327 (Colo. 2012); *In re Fischer,* 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

**30.** *In re Attorney F.,* 285 P.3d at 327 (quoting *In re Rosen,* 198 P.3d 116, 121 (Colo.2008)).

**31.** 819 P.2d 495 (Colo.1991).

**32.** *Id.* at 496.

sented a client in a divorce matter.[33] Considering the lawyer's additional misconduct, as well as five aggravators and one mitigator, the Colorado Supreme Court concluded that a forty-five-day suspension was appropriate.[34] In Respondent's view, the conduct in *Redman I* was more egregious than his own conduct, so a substantially lesser sanction is warranted here.

The People draw comparisons to a very different set of case law. They cite *People v. Zimmermann*, a case in which a lawyer who was subject to a disciplinary suspension accepted fees from clients and engaged in other misconduct.[35] The Colorado Supreme Court disbarred the lawyer, relying in particular on his prior disciplinary record, the fact that his suspension was for disciplinary reasons, and the harm he caused to clients.[36]

In addition, the People point to *People v. Bottinelli.*[37] In that matter, the Colorado Supreme Court commented that the lawyer's misconduct might have warranted mere suspension had he not previously engaged in the same type of misconduct.[38] Because his suspension for previous misconduct had failed to deter future misconduct, however, the Colorado Supreme Court determined that disbarment was necessary, citing ABA *Standard* 8.1(b).[39]

The People also correctly observe that the Colorado Supreme Court has often distinguished between violations of administrative suspension orders and violations of disciplin-

ary suspension orders.[40] In *Redman II*, the Colorado Supreme Court disbarred the respondent for continuing to practice law during the *disciplinary* suspension imposed in *Redman I*.[41] The Colorado Supreme Court noted that ABA *Standard* 8.1 presumptively calls for disbarment when a lawyer knowingly violates a prior disciplinary order or knowingly engages in misconduct similar to prior misconduct that led to a suspension.[42] We therefore find Respondent's citation of *Redman I* to be inapposite.

■ In addition, the People emphasize that the Colorado Supreme Court has singled out dishonesty by lawyers as a scourge upon the profession.[43] "Truthfulness, honesty, and candor are core values of the legal profession," the Colorado Supreme Court has commented.[44] Considering this case law, Respondent's repeated instances of similar misconduct, and his decision to practice while under a disciplinary suspension, disbarment is the appropriate sanction, the People argue.

In this case, Respondent's counsel has repeatedly attempted to minimize the severity of his client's misconduct, suggesting that laypersons could just as well have completed the immigration forms in question.[45] Although the Hearing Board recognizes that there are more protracted or injurious instances of practicing law while suspended, we do not agree that Respondent's misconduct was a trivial violation. It is well established that the selection and completion of legal

33. *Id.*

34. *Id.* at 497.

35. 960 P.2d 85, 88 (Colo.1998).

36. *Id.*

37. 926 P.2d 553 (Colo.1996).

38. *Id.* at 558.

39. *Id.* at 558–59.

40. *Compare People v. Wilson*, 832 P.2d 943, 945 (Colo.1992) (holding that disbarment is appropriate where a lawyer practices law while subject to a disciplinary suspension without winding up his practice or protecting his clients' interests) *with People v. Clark*, 900 P.2d 129, 130 (Colo.1995) (suspending a lawyer for one year and one day for practicing law while administratively sus-

pended where no actual harm to clients was shown) *and People v. Rivers*, 933 P.2d 6, 8 (Colo. 1997) (suspending a lawyer for one year and one day for violating an administrative suspension order and engaging in other misconduct).

41. *People v. Redman*, 902 P.2d 839, 840 (Colo. 1995).

42. *Id.*

43. *See, e.g., In re Pautler*, 47 P.3d at 1179 ("Lawyers serve our system of justice, and if lawyers are dishonest, then there is a perception that the system, too, must be dishonest. Certainly, the reality of such behavior must be abjured so that the perception of it may diminish.").

44. *In re DeRose*, 55 P.3d 126, 131 (Colo.2002).

45. *See, e.g.*, Hr'g Br. at 4.

forms is the practice of law.[46] Indeed, Simmons testified that if PAH had prepared the immigration forms on its own behalf, it would have been "akin to skydiving without a parachute." Moreover, the Hearing Board cannot view Respondent's work as trivial when he billed PAH $3,800.00; unless he was charging an unreasonable fee for the work he characterized as simple, he must have spent a dozen or more hours rendering these services.

In closing, the presumptive sanction for Respondent's misconduct is disbarment, and the balance of aggravating and mitigating factors provides no basis for departing from that presumption. Although Respondent had become well acquainted with disciplinary standards and rules through the case leading to his conditional admission of misconduct, he made a deliberate choice to disregard his order of suspension and to mislead his client. Given the purposeful nature of Respondent's actions, we cannot trust that he will adhere to the Rules of Professional Conduct in the future, nor can we allow him to be a member of this self-regulating legal profession.[47] We thus conclude that Respondent should be disbarred.

## V.  CONCLUSION

Respondent practiced law while subject to a disciplinary suspension, and he was dishonest to his client. Since the mitigating factors here do not prevail over aggravating factors, the presumptive sanction of disbarment is warranted for this serious misconduct.

## VI.  ORDER

The Hearing Board therefore **ORDERS**:

1. **RAVI KANWAL**, attorney registration number 21197, is **DISBARRED**. The **DISBARMENT SHALL** take effect only upon issuance of an "Order and Notice of Disbarment."[48]

2. Respondent **SHALL** promptly comply with C.R.C.P. 251.28(a)–(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.

3. Respondent also **SHALL** file with the PDJ, within fourteen days of issuance of the "Order and Notice of Disbarment," an affidavit complying with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the PDJ setting forth pending matters and attesting, inter alia, to notification of clients and of other jurisdictions where the attorney is licensed.

4. The parties **MUST** file any post-hearing motion or application for stay pending appeal with the Hearing Board **on or before January 29, 2015.** No extensions of time will be granted. Any response thereto **MUST** be filed within seven days, unless otherwise ordered by the PDJ.

5. Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** file a "Statement of Costs" **on or before January 22, 2015.** Any response thereto **MUST** be filed within seven days, unless otherwise ordered by the PDJ.

---

46.  *See, e.g., In re Powell,* 266 B.R. 450, 452 (Bankr.N.D.Cal.2001) ("A non-lawyer engages in the unauthorized practice of law when he or she determines for a party the kind of legal document necessary in order to effect the party's purpose."); *State ex rel. Ind. State Bar Ass'n v. Diaz,* 838 N.E.2d 433, 437 (Ind.2005) (holding that the selection of immigration forms amounts to the practice of law).

47.  *DeRose,* 55 P.3d at 130 (considering the likelihood that misconduct would reoccur in determining an appropriate sanction).

48.  In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.